UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WALLACE JAMES BEAULIEU,  CIVIL NO. 06-4045 (JMR/JSM)

 Petitioner,

v.  REPORT AND RECOMMENDATION

STATE OF MINNESOTA,

 Respondent.

 JANIE S. MAYERON, U.S. Magistrate Judge

 This matter is before the undersigned United States Magistrate Judge on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Docket No. 1], Respondent has filed an Answer to Petition for Writ of Habeas Corpus [Docket No. 4] and a Memorandum in Support of Answer to Petition for Writ of Habeas Corpus [Docket No. 5].  Petitioner has filed a Response to States Answer [Docket No. 8].

 This matter has been referred to this Court for a Report and Recommendation pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c).

 For the reasons discussed below, it is recommended that:

 The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Docket No. 1] be **DENIED** and dismissed with prejudice.

I. INTRODUCTION

 Petitioner Wallace Beaulieu is a Native American who has since been admitted into the Minnesota Sex Offender Program ("Program").  This case arises out of Petitioner's conviction for failing to register as a predatory offender in violation of Minn. Stat. § 243.166 subd. 5(c).  See Petition, ¶ 4. Petitioner claims: (1) that the predatory-offender registration statute is civil or regulatory in nature, and thus, the State of

1

Minnesota lacks the requisite subject matter jurisdiction to enforce this statute against him as a resident of the Leech Lake Indian Reservation; and (2) that the State proceeded to trial without first proving that it had jurisdiction. Id., ¶ 12. The thrust of Respondent's opposition is that it is irrelevant whether the predatory-offender registration statute is civil or regulatory in nature because at the time Petitioner was arrested, he was not living on the reservation where the state does have jurisdiction.

## II. FACTUAL BACKGROUND

Petitioner has been a registered predatory offender since 1996. See State v. Beaulieu, No. A03-669, 2004 WL 1488443 at *1 (Minn. Ct. App. 2004). On October 7, 2004, Petitioner was being held at Beltrami County Jail and was to be released on this date. See Respondent's Appendix as Exhibits 1 and 2 (Transcript of Proceedings ("Tr.")) at 94. Petitioner was under an obligation to register as a predatory offender. Tr. 80. As part of this obligation, Petitioner was not to be released until he filled out an "offender charged information form", which listed the address at which Petitioner was going to reside and his employment information. Tr. 94-95. Petitioner filled out and signed the form on October 7, 2004. Tr. 95-96. Upon being released from jail, Petitioner testified that he went to live at his uncle's house on XXXX Beaulieu Circle located on the Leech Lake Reservation. Tr. 234.

On October 12, 2004, the Beltrami County District Court issued an apprehend and hold order for Petitioner arising out of the commencement of a petition to commit Petitioner under Minn. Stat. §§ 253B.18 and 253B.185 as a Sexually Psychotic Personality ("SDP") pursuant to Minn. Stat. § 253.02, subd. 18(b) and as a Sexually Dangerous Person ("SDP") pursuant to Minn. Stat. § 253.02, subd. 18(c). Tr. 154-55 224-25; see also Petitioner's Response to State's Answer at p. 2. On October 12

and 13, 2004, Beltrami County Sheriff Deputies attempted to locate Petitioner at his registered address at XXXX Beaulieu Circle regarding an order to detain Petitioner, but could not find him. Tr. 101-03, 105-06.

Kenneth Beaulieu, Jr. ("Kenneth Jr."), Petitioner's cousin, testified at trial that his father owned the residence at XXXX Beaulieu Circle, and that upon his return home on October 16 or 17 through the first week in November, he was splitting his time living at his father's house in Beaulieu Circle and his girlfriend's house in Bemidji. Tr. 109, 110, 112, 118. Kenneth Jr. testified that deputies came out looking for Petitioner. Tr. 110. Kenneth notified the deputies that they should check for Petitioner in Duluth because Petitioner had children living there. Tr. 111. After the deputies first came, Kenneth Jr. stated that he saw Petitioner at XXXX Beaulieu Circle s on or before October 17 or 18, when Petitioner picked up his clothes and left and that he never saw Petitioner again at the residence. Tr. 111, 114, 118, 119.

Anson Beaulieu, Petitioner's cousin, testified at trial that Petitioner was living at the XXXX Beaulieu Circle address in October 2004. Tr. 134. Anson also stated that deputies were looking for Petitioner in October 2004. Tr. 132-33, 137. Anson testified that he told Petitioner that the deputies were looking for him and that he was present with Petitioner at the XXXX Beaulieu Circle address when Petitioner attempted to call his attorney to figure out why the deputies were looking for him. Tr. 134, 139, 142. According to Anson, the next time deputies came to talk to him about Petitioner, he told them he did not know where Petitioner was; Anson said he had gone over to XXXX Beaulieu Circle to go fishing with Petitioner but he was gone and Anson had not seen him again. Tr. 134-35, 142-43.

The owner of the residence at XXXX Beaulieu Circle, Kenneth Beaulieu, Sr., testified that Petitioner only stayed at his house for three to four days. Tr. 182. Petitioner's aunt, Shirley Mae Beaulieu, testified that she saw Beaulieu at Beaulieu Circle a couple days before he was arrested, when he brought back some fishing rods that he had borrowed from her. Tr. 226-27.

On October 14, 2004, Polk County Sheriff's Deputy Randy Lee encountered Petitioner at a home in Polk County Minnesota, where the occupants of the residence had requested at 4:29 a.m. that Petitioner and his sister be made to leave the house, despite Petitioner's request that he be allowed to stay. Tr. 146-147.

On October 19, 2004, Beltrami County Sheriff's Deputy Lee Anderson went to Beaulieu Circle to look for Petitioner, however, he testified that he could not locate Petitioner. Tr. 151. Deputy Anderson told several residents of Beaulieu Circle to tell Petitioner that the Beltrami County Sheriff's Department was looking for him. Id. Beltrami County Sheriff's Office Sergeant Mark Holter testified that he attempted to verify Petitioner's residence on October 22, 2004 at XXXX Beaulieu Circle. Tr. 158, 160. Residents on Beaulieu Circle told Sergeant Holter that they had not seen Petitioner in a week. Tr. 160. According to Sergeant Holter, the Sheriff's Office began looking for Petitioner starting on October 12, 2004, and that this was the last day anyone had seen Petitioner in Beltrami County, until his arrest on November 2, 2004 outside a bar located in Duluth, Minnesota. Tr. 124-25 160-61, 253.

According to Petitioner, he was renting a room from his uncle on the condition that he keep the place up by cleaning the property and the garage. Tr. 237. Between October 7 and November 2, 2004, Petitioner testified that he spent a lot of time with his son, but that he was still around Beaulieu Circle. Tr. 238. He also stated that he spent

4

an overnight in Fosston, Minnesota with his sister. Tr. 238-39. In addition, Petitioner claimed that he sometimes stayed overnight at his cousin's house and he also went to Duluth five times to see his son. Tr. 240-41. Petitioner testified that he only stayed overnight in Duluth once, which ended in his November 2 arrest. Tr. 241-43. Petitioner stated that he had he never gone away from XXXX Beaulieu Circle for more than a couple of days. Tr. 247. Petitioner disputed Kenneth Jr.'s testimony that he packed up his clothes and left XXXX Beaulieu Circle after the police started looking for him. Tr. 247. He also challenged Anson Beaulieu's claim that he did not see Petitioner at XXXX Beaulieu Circle after the police first started looking for Petitioner. Tr. 257.

Subsequent to his arrest for failing to register as a predatory offender in violation of Minn. Stat. § 243.166, plaintiff filed a motion to dismiss the charges on the grounds that the State of Minnesota lacked subject matter jurisdiction over the failure to register charge allegedly committed by him on the Leech Lake Reservation. See Respondent's Appendix, Ex. 3. On February 24 and March 16, 2005, the Beltrami District Court denied Petitioner's motion to dismiss for a lack of subject matter jurisdiction on the grounds that facts showed that plaintiff had moved off the reservation at the time of his arrest. Id., Exs. 6, 7.

Subsequently, a jury found Petitioner guilty of failing to register as a predatory offender, and he was sentenced to 24 months in prison.

In his appeal to the Minnesota Court of Appeals, Petitioner argued that the district court lacked subject matter jurisdiction, the evidence was insufficient to support the conviction, the prosecutor committed prejudicial misconduct, the police violated his Fourth Amendment rights, the sentence was based on inaccurate information, and the application of the amended predatory offender registration statute to him violated the

5

Ex Post Facto Clause. See State v. Beaulieu, No. A05-1642, 2006 WL 852139 at *1 (Minn. Ct. App. April 04, 2006). In its decision, the appellate court noted that Petitioner had filed a pretrial motion to dismiss based on lack of subject-matter jurisdiction, arguing that the predatory-offender registration statute is civil/regulatory in nature and, therefore, could not be enforced against an enrolled Leech Lake Band tribal member for conduct occurring on the Leech Lake Indian Reservation. Id. The district court denied the motion. Id. The Court of Appeals concluded that the district court had jurisdiction, as the state had presented substantial circumstantial evidence that appellant was no longer living at XXXX Beaulieu Circle, "consisting of law enforcement visits to Beaulieu Circle, the responses and testimony of family members questioned there about [Petitioner's] whereabouts, [Petitioner's] encounter with police in Fosston on October 14, and his arrest in Duluth on November 2. Id. at *3. While acknowledging that "there was some family testimony to the contrary," the appellate court observed that Petitioner's "uncle testified that [Petitioner] was only at his house for three or four days, and his cousin testified that he saw [Petitioner] come once for his clothes, and then didn't see him." Id. Based on all of this evidence, the Court of Appeals concluded that the evidence was sufficient to support the conviction. Id.

On June 20, 2006, the Minnesota Supreme Court denied review of the Minnesota Court of Appeal's decision.

Petitioner then filed the instant habeas petition. [Docket No. 1].

### III.  DISCUSSION

#### A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254

of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d): Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case. See Copeland, 232 F.3d at 973.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362). Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

### B. Subject Matter Jurisdiction

Petitioner first asserts that the State of Minnesota lacks the jurisdiction to enforce Minn. Stat. § 243.166 on an Indian reservation because the statute is civil or regulatory. See Petition, ¶ 12(A). Minn. Stat. § 243.166 requires a predatory offender to inform his corrections agent or the law enforcement authority that has jurisdiction in the area of the person's primary address of his current address and to submit change-of-address notifications to that person at least five days prior to moving. See Minn. Stat. § 243.166, subd. 3. A person required to register under Minn. Stat. § 243.166, who knowingly violates any of its provisions or intentionally provides false information is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both. See Minn. Stat. § 243.166, subd. 5.

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509 (1991) (citation omitted).

8

Tribal sovereignty is subordinate to only the Federal Government and not to the States. See Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 154 (1980). However, "state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided." California v. Cabazon Band of Mission Indians, 480 U.S. 202, 207 (1987). Congress has done so with Public Law 280. Id. In particular, Congress expressly granted six states, including Minnesota, jurisdiction over specified areas of Indian country within the states and provided for the assumption of jurisdiction by other states. Id. Specifically, § 2a of Public Law 280, codified at 18 U.S.C. § 1162, provides:

> Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:
>
> * * *
>
> Minnesota .................. All Indian country within the State, except the Red Lake Reservation

18 U.S.C. § 1162(a). Section 2(a) of Public Law 280 gives Minnesota broad jurisdiction to enforce on an Indian reservations state "criminal/prohibitory" laws. See Cabazon, 480 U.S. at 207-09.

In addition, § 4(a) of Public Law 280, codified at 28 U.S.C. § 1360(a), gives Minnesota limited jurisdiction over civil litigation involving reservation Indians in state court:

> Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian

9

> country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:
>
> * * *
>
> Minnesota .................. All Indian country within the State, except the Red Lake Reservation

28 U.S.C. § 1360(a). However, § 4(a) of Public Law 280 does not provide states with general civil regulatory power over Indian reservations. See Cabazon, 480 U.S. at 208.

The Supreme Court has recognized that "Congress' primary concern in enacting Pub.L. 280 was combating lawlessness on reservations." Id. (citing Bryan v. Itasca County, 426 U.S. 373, 379-80 (1976)). Pub.L. 280 "was not intended to effect total assimilation of Indian tribes into mainstream American society" through "general civil regulatory power over Indian reservations. . . ." Id. (citing Bryan, 426 U.S. at 387). As such, Petitioner submits that the inquiry in this case involves whether Minn. Stat. § 243.166 is "criminal/prohibitory" law or "civil/regulatory" law. Id. "[I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation." Id. at 209.[1]

---

[1] By way of example, in Cabazon, the State of California insisted that two Indian reservations comply with a state statute that did not entirely prohibit the playing of bingo, but permitted it when: the games were operated and staffed by members of designated charitable organizations who may not be paid for their services; profits are kept in special accounts and used only for charitable purposes; and prizes do not exceed $250 per game. Id. at 205. The Supreme Court concluded that the Bingo Statute regulated rather than prohibited gambling in general because it did not preclude all gambling (including bingo games). Id. at 210-11. The Supreme Court also concluded, "an otherwise regulatory law is enforceable by criminal as well as civil

Respondent argues that it does not matter whether Minn. Stat. § 243.166 is prohibitory or civil in nature, as Petitioner was found to have been living or staying outside of the reservation where the state had jurisdiction.  See Respondent's Memorandum in Support of Answer to Petition for Writ of Habeas Corpus at pp. 8-11. "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory[2] state law otherwise applicable to all citizens of the State."  Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-89 (1973).

This Court concludes that there was sufficient evidence presented by the State, despite the testimony of some witnesses to the contrary,[3] to support a finding that soon after Sheriff's Deputies began looking for Petitioner at his registered address at XXXX Beaulieu Circle on October 12-13, 2004, Petitioner left XXXX Beaulieu Circle and was not residing there or on the Leech Lake Reservation at the time of his November 2, 2004 arrest in Duluth, Minnesota.  Stated otherwise, the state court's judgment that Minn. Stat. § 243.166 was applicable to Petitioner because he had left the Leech Lake Reservation and no longer resided at XXXX Beaulieu Circle, was based on findings of fact that could reasonably be derived from the evidentiary record.  See 28 U.S.C. § 2254(e)(1) ("A determination of a factual issue by a State court shall be presumed to

---

means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280."  Id. at 211.

[2]   Section 243.166 is a non-discriminatory state law, as it does not distinguish between Native Americans and the rest of the population.

[3]   "Federal habeas review 'gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'"  Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

11

be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); see also Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (A "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence."). As such, this Court finds the decision was based on a reasonable determination of the facts in light of the evidence in the State court proceeding, and the habeas petition as it relates to Petitioner's first ground should be dismissed on that basis.[4]

---

[4] At the time that the Minnesota Court of Appeals issued its decision in this case, it was operating under the mistaken opinion that Minn. Stat. § 243.166 was civil or regulatory in nature and consequently, could not be enforced on the Indian reservation. See Beaulieu, 2006 WL 852139 at *2 ("This court has held that the predatory-offender registration statute is a civil/regulatory statute that the state lacks jurisdiction to enforce against an enrolled tribal member on an Indian reservation.") (citing State v. Jones, 700 N.W.2d 556, 559 (Minn. Ct. App. 2005), review granted (Minn. Oct. 18, 2005)). The Minnesota Supreme Court has now determined that Minnesota has jurisdiction to require Native Americans on a reservation to register under Minn. Stat. § 243.166, because the statute is criminal/prohibitory in nature. See State v. Jones, 729 N.W.2d 1, 2-3, 12 (Minn. 2007). In Jones, the defendant, Jones, was charged with failing to register his current address with the appropriate authorities in violation of Minn. Stat. § 243.166. Id. at 2. Jones was an enrolled Indian tribal member with the Leech Lake Band and resided on this reservation. Id. at *3. Jones moved to dismiss the charges, arguing that Minn. Stat. § 243.166 was civil/regulatory in nature and therefore, the State of Minnesota lacked subject matter jurisdiction to prosecute him. Id. at *2. The Cass County District Court granted Jones' motion to dismiss and the Minnesota Court of Appeals affirmed. Id. at 3 (citing State v. Jones, 700 N.W.2d 556, 558 (Minn. Ct. App. 2005)). The Minnesota Supreme Court reversed, concluding that a tribal member's violation of Minn. Stat. § 243.166 is a criminal/prohibitory offense and therefore, the state had the requisite subject matter jurisdiction. Id. at 12. Jones appealed the decision to the United States Supreme Court. The Supreme Court denied certiorari. See Jones v. Minnesota, 128 S.Ct. 879, 169 L.Ed.2d 726 (2008). Accordingly, even if the courts in the instant case had determined that Petitioner was residing on the Leech Lake Reservation at the time he was arrested for failing to register his residence, this Court could not find that the State of Minnesota's determination that it had jurisdiction over such an offense was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, particularly where there is no Supreme Court case addressing this issue and the Supreme Court denied certiorari on the Minnesota Supreme Court's decision in Jones.

### C. Whether the State Proved they had Jurisdiction Prior to Trial

Petitioner's second ground for relief is his assertion that while he had challenged the State's jurisdiction to prosecute him, the State proceeded with his trial without proving the requisite jurisdiction. See Petition, ¶ 12(B). This assertion by Petitioner is without merit. Petitioner filed a motion to dismiss with trial court prior to his trial, arguing dismissal of the charges under Minn. Stat. § 243.166 was appropriate on the grounds that the State of Minnesota lacked subject matter jurisdiction over his failure to register. See Respondent's Appendix, Ex. 3. On February 24, 2005 and March 16, 2005, the trial court denied Petitioner's motion to dismiss for lack of subject matter jurisdiction on the grounds that the facts showed that plaintiff had moved off the reservation at the time of his arrest. Id., Exs. 6, 7; see also Beaulieu, 2006 WL 852139 at *1 (acknowledging that Petitioner had brought a pretrial motion to dismiss on subject matter jurisdiction grounds and that the trial court had denied the motion). Despite Petitioner's assertion to the contrary, the trial court found that the State had subject matter jurisdiction over him prior to trial, thereby invalidating any assertion by Petitioner that the State proceeded with his trial without proving the requisite jurisdiction.

### IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [Docket No. 1] be **DENIED** and dismissed with prejudice.

Dated: June 20, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

13

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 8, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.